## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| UNITED TAX GROUP, LLC, | ) | Case No. 14-10486 (LSS) |
| | ) | |
| Debtor. | ) | **Hearing Date: May 5, 2016 at 3:00 p.m.** |
| | ) | **Obj. Deadline: April 28, 2016** |

### Interested Party SWZ Financial II, LLC's
### Motion for an Order Dismissing Chapter 7 Bankruptcy Case

Interested Party, SWZ Financial II, LLC (the "Movant"), by and through the undersigned counsel, hereby moves for entry of an order (the "Motion") pursuant to Section 707(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rule 1017(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") dismissing the above captioned Chapter 7 case. In support of the Motion, the Movant respectfully states as follows:

### Jurisdiction

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution.

2.     Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory and legal bases for relief requested herein as section 707(a) of the Bankruptcy Code and Bankruptcy Rule 1017(a).

## General Background

4.      On or around March 5, 2014, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *See D.I. 1.*

5.      Meeting of Creditors pursuant to 11 U.S.C. 341(a) was held on or around April 1, 2014. *See D.I. 13.* No holder of any filed claim nor any other alleged creditor of the Debtor appeared at such meeting.

6.      The Debtor originally filed this matter as a no-asset bankruptcy. On April 7, 2014, the Trustee filed a Notice of Change Case from No Asset to Asset. *See D.I. 14.*

7.      The deadline for filing Proofs of Claims was set to July 10, 2014. *See D.I. 15.*

8.      On or around June 25, 2015, the Trustee filed Adversary Proceeding No. 15-50880-LSS. The named defendants filed their answer to Adversary Proceeding No. 15-50880-LSS on or around July 30, 2015.

9.      On or around March 3, 2016, the Trustee filed Adversary Proceeding No. 16-50088-LSS.

## Parties

10.     Debtor was in the tax resolution business. Its principal business was to function as an intermediary between federal and state tax authorities, on the one hand, and consumers and small businesses with varying tax problems, on the other. Debtor earned fees pursuant to "tax service agreements" entered into by the consumers and small business clients. These agreements typically provided for installment or progress payments in respect of the tax services provided by the Debtor. A typical tax service agreement might have a term of 12 to 24 months.

11.    Movant was a special purpose entity that was formed in 2012 for the purpose of syndicating a secured loan to Debtor to grow its business.  The loan was secured by a general lien on all the assets of the Debtor, including after acquired property. Movant negotiated the loan documents with the Debtor and then sold off loan "participation" interests in the loan to unrelated parties contemporaneously with the loan funding.  These participation interests accounted for 80% of the beneficial interest in the loan, thereby leaving Movant as essentially a loan servicer and fiduciary to the loan participants with a minority economic interest in the loan. In the applicable "Participation Agreements", Movant committed to act as trustee or agent for the participating lenders and in return was entitled a portion of the interest income from the loan. Major decisions relating to the loan required the consent of the loan participants, much in the same manner as if the participants were actually members of Movant itself.

12.    In the second and third quarters of 2013, Debtor's business suffered a number of reversals, including a sexual harassment claim by an employee named Sarah Wonders.  Debtor's management did not believe that the case was meritorious and, accordingly, fought the litigation vigorously.  The costs of that lawsuit, coupled with changes in the competitive and regulatory environment for tax resolution companies generally, proved too much for the Debtor to continue and on or about November 4, 2013, Movant declared Debtor to be in default in respect of its secured loan.

13.    Thereafter, Movant, acting on behalf of itself and the loan participants, commenced litigation in Palm Beach County, Florida to enforce the loan documents, including the general pledge of all the assets of the Debtor.  Each of Debtor and Movant was represented by its own competent outside counsel in such litigation. By a stipulation dated November 27, 2013, Debtor and Movant settled that litigation.  The settlement terms included the transfer to

3

Movant of all the accounts receivable and work in progress under tax service agreements that were then owned by Debtor.   In consideration of the agreed transfers in lieu of actual enforcement of the applicable security interest, Movant agreed to assume certain costs and expenses then extant, including certain obligations to debtor's employees. Debtor agreed to provide cooperation and not interfere in any way with the efforts that Movant might undertake to realize on its collateral.

14.   Movant, having no operations or employees of its own and no experience in the tax resolution business, contracted with an unrelated company "Tax Help MD" , ("Tax Help") to provide the servicing and collection expertise necessary to realize on the value of the unperformed tax service agreements.  Tax Help was not a transferee of any beneficial ownership in the Debtor's property—it was merely a collection and servicing agent hired on market terms to try to realize value for Movant from an underwater portfolio of loan collateral.  A copy of the Tax Service Agreement Portfolio Servicing Agreement (the "Tax Servicing Agreement") with Tax Help is attached hereto as Exhibit "A."

15.   Accordingly at the time of the commencement of this case, on March 5, 2014, Debtor had ceased all business operations and its "book" of uncollected fees and partially performed tax service agreements was the property of Movant, as the former secured lender that succeeded to that property by transfer in lieu of foreclosure.   All other property of debtor, consisting of office furniture and business equipment was of only nominal value.

16.   At all relevant times, the Debtor was owned by Allerand, LLC (90.01% of profits) and ECW Investco, LLC ("ECW") (9.999% of profits). Allerand, LLC was the Managing Member of the Debtor prior to Debtor filing for bankruptcy. Richard Sabella is the Managing Member of Allerand, LLC.

17.     Movant is owned by Avalon National Corporation ("Avalon") (50% capital and profits), Allerand LLC (40.001% of profits) and ECW Investco, LLC (9.999% of profits). Avalon is the Co-Managing Member of Movant (with ECW). Gary Zentner is the Managing Member of Avalon.  Gary Zentner, acting for Avalon, at all relevant times, was the effective chief operating officer and sole decision maker in respect of the business and affairs of Movant. Neither Allerand nor ECW had any role in the day to day affairs of the Movant.

## Requested Relief

18.     By this Motion, Movant respectfully requests that the Court enter an order, pursuant to section 105(a) and 707(a) of the Bankruptcy Code and Bankruptcy Rule 1017(a), dismissing the Chapter 7 case and all related litigations, in each case "with prejudice" and for the other relief prayed for below.

## Preliminary Statement

19.     This case does not belong in the Bankruptcy system.  Even if viewed in the light most favorable to the Trustee and his counsel, this case is essentially a two-party dispute between the Debtor and claimant Sarah Wonders, who has a current filed claim in the amount of $70,000.00. As identified below, there is only one other claim in this case, for $2,408.73. Two-party disputes warrant dismissal in bankruptcy. *In re Scarborough – St. James Corporation, supra at \*2.*

20.     However, if more fairly characterized, this case is about a Trustee that has abused his discretion and continued an overzealous litigation regime. Interestingly, even Ms. Wonders—

the sole creditor whose interest is allegedly being asserted by the Trustee-- is not very interested in this case. She did not appear at the 341 meeting.

21. Notwithstanding the fact that there are no active or material creditors, the Trustee and his counsel have litigated this case, and the two related adversary proceedings he has commenced, with extraordinary zeal and with no regard to the mounting costs to an estate that has no assets. As of this time, there can be no doubt that the legal fees of the Trustee's counsel have already exceeded the total of all filed claims in this case, and discovery in the main case and the two pending adversary proceedings has barely begun.

22. The Trustee has also engaged in bad faith conduct warranting dismissal of this Bankruptcy. The evidence in this matter will establish that the Trustee is pursuing this case and the related adversary proceedings for the sole purpose of coercing Movant and the other defendants in the adversary proceedings to pay a "settlement" that will fund the ever-escalating fees of the Trustee and his counsel.

23. In this simple case, where there is virtually only a single $70,000 creditor, the Trustee has filed two (2) adversary proceedings seeking to recover in excess of $3,821,402.69 based mainly on unsupported theories of fraudulent transfers with no basis for the claimed damages. The amount the Trustee seeks to recover is preposterous in relationship to amount of claims against the Bankruptcy Estate and provides further evidence of his bad faith.

24. In addition, the Trustee has propounded extremely onerous discovery demands in the main case and one of the two pending adversary proceedings related to this Debtor and its former principals and even its creditors. These actions were likewise taken to cause the Movant and the other defendants to pay the Trustee and his law firm "to go away" rather than pay their own lawyers to dispose of these meritless cases through litigation in this court.

25.     It strains credulity to believe that the Trustee could be taking these actions in good faith for the benefit of Ms. Wonders, but even if he were acting in good faith as a proxy for the sole material creditor in this case, this case does not belong in the Bankruptcy Court because there are no assets in the estate and, even if there were assets, there could be no equitable division of those assets among the Debtor's creditors, there being essentially only a single creditor. Bankruptcy exists to achieve an equitable division of a debtor's assets among many creditors, not to allow the Trustee and its counsel to act as the agent of a single creditor and to run up legal bills that are disproportionate to the value of the claims involved.

26.     Additionally, the Trustee has converted the Movant's property (mail correspondence) thereby interfering with the Movant's ability to service taxpayer accounts. The Movant took ownership of those assets through a perfected security interest in the underlying taxpayer accounts pursuant to a Security Interest dated April 11, 2012 ("Security Agreement"), a Delaware UCC-1 Financing Statement dated April 11, 2012, as amended ("Delaware UCC") and a Stipulation of Settlement dated November 27, 2013 ("Settlement Agreement"). Inconsistently, the Trustee grossly overvalues the taxpayer accounts that he alleges were fraudulently transferred while at the same time interfering with Movant's ability to service such taxpayer accounts and realize the full potential value of Movant's assets.

27.     There is no remaining purpose to be served by having the Debtor remain in this bankruptcy case.

## Basis for Relief

28.     The court may dismiss a case under this Chapter only after notice and a hearing and only for cause, including (1) unreasonable delay by the debtor that is prejudicial to creditors; (2) non-payment of any fees or charges required under Chapter 123 of Title 28; and (3) failure of the debtor in a voluntary case to file within fifteen days or such additional time as the court may allow after filing of the petition commencing such case, the information required by paragraph (1) of Section 521(a), but only on a motion by the United States Trustee. 11 USC § 707(a).

29.     Courts have wide latitude in determining whether cause exists to convert or dismiss. Dismissal under Section 1112(b) provides ten (10) enumerated examples which constitute statutory cause… However the court is not limited to the statutory examples and cause may be determined from the facts and circumstances of the case. *In re Nugelt, Inc., 142 B.R. 661, 665 (Bankr. D. Del. 1992 (internal citations omitted). See also In re Young, 76 B.R. 376, 378 (Bankr. D. Del. 1987) (internal citations omitted).* Applying the same principals to Section 707(a) that apply to Section 1112(b), this Court should find that it has wide latitude in determining whether cause exists to dismiss this Chapter 7 bankruptcy and that the three (3) enumerated examples in Section 707(a) are not limiting for purposes of finding cause to dismiss.

30.     Cause is a flexible standard, and the examples listed in Subsection (b)(4) are not exhaustive. *See In re Scarborough – St. James Corporation, 2015 WL 5672628 at \*2 (Bankr. D. Del.) (internal quotations omitted)(discussing "cause" under section 1112(b)).* Once the Court finds that cause exists, dismissal or conversion is necessary, except in the limited circumstances. *Id. (internal quotations omitted).*

A. <u>Two-Party Dispute</u>

31.    Dismissal is appropriate where there is a two-party dispute. *In re Scarborough –*
*St. James Corporation, supra at \*2.*

32.    The facts and circumstances of this case warrant dismissal. This is essentially a
one creditor bankruptcy (i.e. two-party dispute). There are five (5) filed claims totaling
$83,039.73, including the one major claim on behalf of Sara Wonders accounting for
$70,000.00[1]. The Trustee has filed two (2) adversary proceedings seeking a total of at least
$3,821,402.69 in unsubstantiated damages. The Trustee is running up Trustee and attorney fees
and will undoubtedly have the largest claim against the Bankruptcy Estate by the end of the
bankruptcy.

33.    Three (3) of the five (5) creditor claims should be dismissed/withdrawn. Claim 1-
1 is a claim by Christine D. Hanley & Associates PA in the amount of $2,408.73 for a final
judgment dated February 25, 2014 (Claim 1-1). Claim 2-1 is a duplicate of claim 1-1. Claim 3-1
is a claim by Comcast in the amount of $1,547.27 for alleged charges. Based upon information
and belief, Comcast believes that its claim was filed in error and has released its claim identified
as Claim 3-1 in a letter that was mailed to the Debtor, which, on information and belief, is in the
possession of the Trustee and among the converted items of the Debtor's mail wrongly taken by
the Trustee. Claim 6-1 is the claim by Sarah Wonders currently in the amount of $70,000.00
awarded in a final judgment dated November 18, 2013. Claim 7-1 is a claim in the amount of
$2,000 by Becket and Lee LLP on behalf of American Express Travel Related Service Co. Inc.
Claim 7-1 was filed on, July 23, 2014 outside of the claims bar date of July 10, 2014. The
remaining claims have long ago been withdrawn or reduced to zero. Therefore, there are two (2)

---

[1] Sara Wonders' claim includes a reservation to amend her claim to assert additional amounts. The claim has not
been amended at this time.

creditors of the Bankruptcy Estate, Sarah Wonders ($70,000.00) and Christine D. Hanley and Associates PA ($2,408.73). A copy of the claims registry is attached hereto and incorporated herein as Exhibit "B."

34.    Based upon information and belief, the Trustee has been ignoring his duties to properly administer the estate.  Based upon information and belief, the Trustee has not performed any investigation into the duplicate claims (Claim 1-1 and 2-1) by Christine D. Hanley & Associates PA. Based upon information and belief, the Trustee has not performed any investigation into the claim 3-1 filed by Comcast. Based upon information and belief, Comcast has released its claim identified as Claim 3-1 that was filed in error in a writing that was mailed to the Debtor and is in the possession of the Trustee. Based upon information and belief, the Trustee has not contested claim 7-1 even though it potentially falls outside the claims bar date of July 10, 2014.

B.    Adversary Proceedings Filed in Bad Faith.

35.    Dismissal is also warranted because the Trustee has filed bad faith adversary proceedings against Movant and former employees and owners of the Debtor.

36.    The Trustee has crossed the line of zealous advocacy into meritless bullying, harassment and behavior designed to intimidate by filing (i) Adversary Proceeding No. 15-50880-LSS against SWZ Financial II, LLC; Tax Help MD, Inc.; Allerand, LLC and Richard J. Sabella seeking $3,000,000 in unsubstantiated damages (in addition to punitive damages); and (ii) Adversary Proceeding No. 16-50088-LSS against Ward Welke and John Does 1 – 100 seeking $821,402.69 in unsubstantiated damages (in addition to punitive damages). The Trustee seeks more than $3,821,402.69 in damages despite the fact that the claims against the estate

currently total only $83,039.79[2]. A copy of the Complaint filed in the SWZ Adversary Proceeding (the "SWZ Complaint") is attached hereto and incorporated herein as Exhibit "C."

37.     Adversary Proceeding No. 15-50880-LSS (the "SWZ Adversary Proceeding") involves a $501,000 secured loan from the Debtor to SWZ (the "SWZ Loan"). The Trustee admits that Movant funded $501,000.00 of the SWZ Loan on April 11, 2012. *See SWZ Complaint ¶ 16.* The Trustee filed the SWZ Adversary Proceeding against the named defendants seeking $3,000,000 in damages (in addition seeking to punitive damages) without any substantiation.

38.     Many of the claims in the SWZ Adversary Proceeding are undeniably baseless. For example, in Count II of the SWZ Adversary Proceeding and pursuant to 11 U.S.C. § 547(b), the Trustee seeks to void as preferential a transfer of security interest and the Delaware UCC filing made on April 11, 2012. The transfer of the security interest and the Delaware UCC were contemporaneously made with the execution/transfer of the SWZ Loan on April 11, 2012 and occurred well outside the Trustee's alleged one-year insider preference period (693 days prior to the Petition Date). There is no factual or legal basis to void the transfer of the security interest and Delaware UCC pursuant to 11 U.S.C. § 547(b).

39.     Another example involves the Trustee's claims of fraudulent transfers pursuant to 11 USC § 548(a)(1)(B) and Florida law with respect "Two-Year Transfers" which are repayments on the Loan totaling $307,507.17. *See Complaint ¶ 25 (the Complaint contains an addition error calculating the total as $289,513.27).* The Trustee alleges the Two Year Transfers were not made for reasonably equivalent value. *See e.g. Complaint ¶ 59.* Payments made on account of valid antecedent debts are presumptively made for reasonably equivalent value. *See In*

---

[2] This amount is reduced to $72,408.73 after removing a duplicate claim (Claim 2-1); a claim that should be released (Claim 3-1); and a claim filed after the claim bar deadline (Claim 7-1).

*re Opus East LLC, 528 B.R. 30, 83 (Bankr. D. Del. 2015)*. The Trustee does not plead facts to overcome this presumption. The Trustee's argument that transfers of $307,507.17 to repay the $501,000 SWZ Loan were not made in exchange for reasonably equivalent value has no basis in logic.

40.    The SWZ Adversary Proceeding is also baseless for other less obvious reasons. For example, the Trustee alleges that the transfer of "Foreclosed/Transferred Assets" which were customer accounts of the Debtor, i.e. accounts of taxpayers who owed interest and in some cases penalties to the Internal Revenue Service, are worth the entire amount of the accounts receivable, $551,349.00. The Trustee refuses to apply any discounting based on the fact that the accounts still needed to be serviced and collected upon or provide any bad debt allowance for the high credit risk accounts. Additionally, there is a large risk that many of the taxpayer customers would elect not to continue with a new servicer. In the real world, SWZ, with the assistance of Tax Help MD, Inc. was only able to recover $128,776.80 (which does not include a reduction for the costs of servicing) from the Foreclosed/Transferred Assets. *See Payment Spreadsheet attached hereto and incorporated herein as Exhibit "D" (Names of Taxpayers Redacted)*. The Debtor never repaid SWZ the entire amount of principal on the secured Loan. Without any evidentiary basis, the Trustee is claiming over $3,000,000.00 should be paid to the Bankruptcy Estate from these secured lenders that never even received back the principal amount of their loan.

41.    The Trustee recently continued his bad faith conduct by filing Adversary Proceeding No. 16-50088-LSS (the "Welke Adversary Proceeding") on or around March 3, 2016. In the Welke Adversary Proceeding, the Trustee asserts claims of voidable preferences under § 547(b) and fraudulent transfers under § 548(a)(1)(B) and Florida state law. The Trustee is seeking $821,402.69 against Ward Welke and John Does 1 – 100. A copy of the complaint

filed in the Welke Adversary Proceeding (the "Welke Complaint") is attached hereto as Exhibit "E." The Welke Complaint contains only bare-bones allegations, cannot identify 100 of the alleged defendants and does not satisfy the pleading requirements of *Twombly* and *Iqbal*. *See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d. Cir. 2009)*.

42.    Mr. Welke was employed by Debtor and was Managing Member of ECW Investco, LLC.

43.    It is apparent that the Trustee did no actual investigation prior to filing his complaint in the Welke Adversary Proceeding evidenced by the fact that (i) he names John Does 1 – 100 as co-defendants; and (ii) the transfers were for valid debts of the Debtor made with a corporate credit card. *See corporate Amex card account statements together with a summary spreadsheet identifying the transfers attached hereto and incorporated herein as Exhibit "F."* The transfers in the Welke Complaint were all legitimate business expenses incurred on behalf of and for the benefit of the Debtor. The Trustee had or should have had physical possession of the same statements that are annexed hereto as part of the Debtor's business records, all of which were delivered to him or made available for pickup by him following the commencement of this case.  Rather than spend the time to review these same business records for which he was responsible, he spitefully sued Mr. Welke in bad faith simply to impose legal fees on him.

44.    The transfers alleged in the Welke Complaint were made from the Debtor's PNC Account to make payments on the Debtor's corporate Amex credit cards (Accounts ending 2007 and 2001) ("Corporate Amex Cards").  Mr. Welke's name was included on the credit card and statements, along with "United Tax Group" because he was the authorized signatory on behalf of Debtor with respect to the Debtor's Corporate Amex cards (see e.g. statements in Exhibit F identifying Ward Welke and United Tax Group at the top of each statement). A review of the

Corporate Amex Card Statements reveals the majority of transactions were lead generating advertising expenses incurred on behalf of the Debtor. All of the transactions were incurred for the benefit of the Debtor.

45.     The Trustee filed the Welke Complaint without any evidence or investigation of even his own file materials to support his allegations that (i) "the Debtor received less than a reasonably equivalent value" *(see Welke Complaint ¶¶ 27, 35, 41)*; or (ii) the $821,402.69 in transfers "were made for Welke's benefit; Welke was the initial transferee or the beneficial transferee of the Transfers." *(Welke Complaint ¶ 16; see also Welke Complaint ¶ 54)*. Exhibit F proves the transfers were for the benefit of the Debtor. The Movant believes that the Trustee has filed the Welke Adversary Proceeding in order to improperly attempt to assert pressure on the Defendants in the SWZ Adversary Proceeding.

46.     Obviously, the Trustee could have reviewed these statements and himself determined what is obvious from them—that all the alleged fraudulent transfers were actually proper business expenses of the Debtor. He purposely did not make any effort to review them *precisely because he knew that* such a review would likely reveal that there were no fraudulent transfers.  The filing of Welke Complaint is a blatant abuse of the power given the Trustee under the Bankruptcy Code, intended only to coerce payments from the defendants that have nothing to do with any alleged fraudulent transfers but all to do with the administrative expenses the Trustee is incurring by the day in a meritless case.

47.     The Trustee's claims of $3,821,402.69 in damages in relation to the size of the total creditor claims demonstrate the Trustee's bad faith and unreasonableness. The Trustee is causing injury to the Bankruptcy Estate, while in a conflict of interest, driving up fees for both him and his attorneys which already exceed the total claims against the Bankruptcy Estate.

C. Dismissal Will Not Negatively Affect the Creditors; The Debtor is Negatively Affected by Continuing this Bankruptcy.

48.     Sarah Wonders, the only major creditor, will not be prejudiced by the dismissal of the Bankruptcy. Ms. Wonders has filed a lawsuit in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, Case No. 2013CA018732(AE) ("Wonders Florida Lawsuit") which is currently stayed. The Wonders Florida Lawsuit contains similar Florida Uniform Fraudulent Transfer claims as found in the SWZ Adversary Proceeding. With the exception of the Tax Help MD, Inc. and Allerand, LLC, the Wonders Florida Lawsuit names the same defendants in the SWZ Adversary Proceeding (and additional defendants including Ward Welke). A copy of the complaint (excluding exhibits) in the Wonders Florida Lawsuit is attached hereto and incorporated herein as Exhibit "G."

49.     The Trustee is essentially acting as a proxy for Sarah Wonders and running up costs on behalf of the Debtor by pursuing his unsubstantiated claims. Ms. Wonders is seeking attorneys' fees in the Wonders Florida lawsuit. *See Exhibit G subsection (a) of the Prayer for Relief page 33.*

50.     Ms. Wonders should only be entitled to attorneys' fees, if after a finding on the merits should Ms. Wonders prove her claims by the applicable legal standard which the Florida court could consider whether attorneys' fees are recoverable and warranted. Ms. Wonders should not be entitled to have the Bankruptcy Estate pay her attorney's fees prior to a finding of any wrongdoing on behalf of the named defendants by having the Trustee pursue his unsubstantiated claims against the Movant and other named defendants. The Bankruptcy Estate, the Debtor and the entire Bankruptcy Court system are better served by having Sarah Wonders pursue her own legal claims.

D. <u>Trustee's Interference with Servicing the Taxpayer Accounts</u>

51.    On March 14, 2013, the Trustee personally appeared at the Debtor's former premises and directed Mr. Sabella and his assistant to send all of the mail addressed to the Debtor (but which then belonged to Movant as part of the Foreclosed Assets) that had accumulated there and was being held for pick-up by Tax Help to the Philadelphia office of the Trustee's accounting firm. When Movant protested that these actions would have serious impacts on Movant and the innocent taxpayer customers that were former customers of the Debtor, the Trustee said "that's your problem, not mine." The Trustee also filed change of address notices with the post office to make sure all future mail deliveries of the mail addressed to the Debtor (but which belonged to Movant as part of the Foreclosed Assets) were made directly to the same Philadelphia office.

52.    Tax Help and Movant acquiesced in these actions initially because they believed that the Trustee would cull through the mail and promptly turn over to them those pieces that obviously were the Movant's property and related to the Foreclosed Assets. After some time, Movant called the Trustee to find out when the Movant's mail would be coming, to which the Trustee replied that there would be no turnover of any mail pieces to the Movant or anyone else. To this date, it appears that the Trustee has taken no reasonable actions to return any of the mail to its rightful owner or to contact the affected taxpayers to let them know that he has simply retained their sensitive tax information and refused to release it to the intended recipient of it. In fact, it appears that the Trustee has taken no meaningful action with respect to the mail at all except to collect it in a pile in his Philadelphia office.

53.    Needless to say, these actions have interfered with SWZ's ability to service the taxpayer customer accounts included in the Foreclosed/Transferred Assets and caused further

financial harm to Movant and Tax Help. Pursuant to the Security Agreement, the Delaware UCC and the Settlement Agreement, SWZ had the legal right to own and possess any and all mail that related to or was a part of the Foreclosed/Transferred Assets.

54.    The conversion of this sensitive and valuable property by the Trustee was completely unnecessary and did not result in any benefit whatsoever to the estate in this case. The harm that was intentionally caused to Movant by these actions is obvious.

55.    Less obvious but far more troubling is the impact that these spiteful and inexplicable actions had on scores of innocent taxpayers that had mailed important tax return information or notices to the Debtor's address in the expectation that they would be received and acted upon by Tax Help.  Because Tax Help never received the applicable materials, the innocent taxpayers paid a price for the Trustee's wrongful actions. It is obvious that the Trustee took no action whatsoever to safeguard the interests of these persons and undoubtedly caused serious and continuing harm to a number of them. Movant expects that a number of these affected taxpayers will be available to testify on these matters in the Florida litigation that Movant and Tax Help MD are preparing against the Trustee, subject to this Court's granting of the Barton Motion (as defined below).

56.    Based upon information and belief, the Trustee took possession of the mail correspondence in complete disregard for Movant's rights as the owner of the Foreclosed/Transferred Assets and with the expectation that he could hold the mail "hostage" to get a quick settlement from Movant. When this did not happen, he simply allowed the mail to pile up, ignored the important correspondence of innocent taxpayers and turned to other means to get himself and his law firm paid, including the two meritless adversary proceedings described above.

57.     Incredibly, the Trustee attempts to recover at least $551,349.00 (the full face amount of all the accounts and unperformed tax service agreements) from SWZ for the transfer of the Foreclosed/Transferred Assets while at the same time deliberately interfering with SWZ's ability to realize even a fraction of that inflated value of the very same assets by withholding the mail necessary for the accounts to be collected and the tax service agreements fulfilled. SWZ should have been able to recover an amount closer to $196,351.00, the estimated value of the Foreclosed/Transferred Assets provided by the Debtor. *See SWZ Complaint (Exhibit "C" referenced above) ¶ 23.* As a result of the Trustee's interference, SWZ was only able to collect $128,776.80 (which does not include a reduction of approximately $40,000 for the costs of servicing) on the Foreclosed/Transferred Asset. *See Exhibit "D" (referenced above).* Additionally, Tax Help was unable to properly service the taxpayer customer accounts and collect all of the servicing fees it was entitled to under the Tax Servicing Agreement. *See Exhibit A (referenced above).*

58.     The Trustee's misconduct with respect to the foregoing is further examined in the Motion for Leave to File Complaint Against the Bankruptcy Trustee (Barton Motion) and Opening Brief in Support thereof (collectively, the "Barton Motion") filed contemporaneously herewith by SWZ and Tax Help in the SWZ Adversary Proceeding. *A copy of the Barton Motion is attached hereto and, together with the arguments and exhibits contained therein, is incorporated herein as Exhibit "H".*

E.    Trustee's Administrative Fees should be Disallowed.

59.     This Court should rely upon the opinion of Judge Richard Posner with respect to questionable lawsuits filed by Chapter 7 Trustees:

> The filing of lawsuits by a going concern is properly inhibited by
> concern for future relations with suppliers, customers, creditors,

and other persons with whom the firm deals (including government) and by the cost of litigation. The trustee of a defunct enterprise does not have the same inhibitions. A related point is that while the management of a going concern has many other duties besides bringing lawsuits, the trustee of a defunct business has little to do besides filing claims that if resisted he may decide to sue to enforce. Judges must therefore be vigilant in policing the litigation judgment exercised by trustees in bankruptcy, and in an appropriate case must give consideration to imposing sanctions for the filing of a frivolous suit. The Bankruptcy Code forbids reimbursing trustees for expenses incurred in actions not reasonably likely to benefit the debtor's estate. *Maxwell v. KPMG LLP, 500 F.3d 713 (7th Cir.) (internal citation omitted).*

60.    The Trustee's litigation judgment in this Chapter 7 bankruptcy is more than questionable, it is in bad faith.

61.    For all of the bad faith conduct set forth above, the Trustee should be precluded from recovering his administrative and legal fees against the Debtor and/or attempting to recover such fees from any third party.

## Conclusion

62.    Currently the only two (2) claims (after adjusting for duplicate claims, claims to be withdrawn and post deadline claims) in this Bankruptcy total $72,408.73. The Trustee is running up costs and expenses and will undoubtedly have the largest claim against the Bankruptcy Estate by the end of the bankruptcy. The Trustee has engaged in bad faith and willful misconduct involving failing to investigate creditor claims; filing adversary proceedings asserting claims in excess of $3,821,402.69 in unsubstantiated damages; and converting Movant's assets and interfering with Movant's ability to service such assets (taking possession of and withholding mail correspondence). This is essentially a two (2) party bankruptcy and the Trustee is causing more harm to the Debtor, its estate and its creditors than good. The Trustee

and his counsel should be barred from recovering any fees incurred with respect to this Bankruptcy.

### Notice

63.    Notice of the Motion has been given to (i) the United States Trustee, (ii) the Debtors' unsecured creditors, and (iii) those parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Movant submits that no other further notice is necessary.

64.    Dismissing the Debtor's Chapter 11 case is in the best interests of the Debtor, its estate and creditors, and accordingly the Court should find that cause for such dismissal exists.

65.    No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Movant, SWZ Financial II, LLC, respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit I**, dismissing the Debtor's Chapter 7 case and granting Movant such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE WILLIAMS LAW FIRM, P.A.

By: _____
John L. Williams (Del. Bar #4473)
Brian C. Crawford (Del. Bar #4941)
1201 N. Orange Street, Suite 600,
P.O. Box 511
Wilmington, DE 19899-0511
Tele: (302) 575-0873
Fax: (302) 575-0925

E-mail: John@TrustWilliams.com
Brian@TrustWilliams.com

*Attorneys for the Defendant,*
*SWZ Financial II, LLC*

March 30, 2016
Wilmington, Delaware