IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| UNITED TAX GROUP, LLC, | ) | Case No. 14-10486 (LSS) |
| | ) | |
| Debtor. | ) | Re: ECF Nos. 126, 127, 195, |
| | ) | 196, 232, 233, 235, 236 |

## MEMORANDUM ON MOTION PURSUANT
## TO 11 U.S.C. § 324 FOR REMOVAL OF GEORGE L. MILLER, TRUSTEE[1]

Removing a chapter 7 trustee is an extraordinary remedy. Here, in this acrimonious

case, it is not warranted. I held a two-day evidentiary hearing on a motion ("Removal

Motion")[2] seeking to remove George L. Miller, the chapter 7 trustee in this case ("Trustee").

The Removal Motion was filed after I denied Certain Movants'[3] request to dismiss the case

outright.

Despite listening carefully for evidence of conduct that would rise to the level

justifying removal of a trustee, none came close. Rather, what was presented was a series of

disagreements over usage of less than precise words or language, contradictory recollections

over the condition of Debtor's offices during Trustee's visits several years earlier, and

Movants' dissatisfaction with Trustee's case management and personality. While there is

---

[1] This Memorandum and Order constitutes my findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052. All references to the docket are to the main case unless otherwise indicated. Citations to the docket (as opposed to the evidentiary record) are limited and only used when necessary to support an undisputed fact or to provide context.

[2] SWZ Financial II, LLC, Tax Help MD, LLC, Allerand, LLC, Edward Welke and Richard J. Sabella Motion Pursuant to 11 U.S.C. § 324 for Removal of George L. Miller, Trustee, ECF No. 126.

[3] Movants are SWZ Financial II, LLC ("SWZ"), Tax Help MD, LLC ("Tax Help"), Allerand, LLC ("Allerand"), Edward Welke ("Welke") and Richard J. Sabella ("Sabella"). I will refer to movants on this Removal Motion, collectively as "Movants." Where actions were taken only by a subset of Movants, I will use the term "Certain Movants" unless further specificity is required.

no doubt that Trustee has, at times, taken an aggressive posture in this case, such conduct does not merit his removal. The Removal Motion, therefore, will be denied.

***General Overview of the Case***

I provide an overview to present the context in which the Removal Motion is viewed; details can be found in numerous other rulings.[4]

United Tax Group, LLC ("Debtor") was in the tax resolution business. On March 4, 2014, it filed a no-asset voluntary chapter 7 bankruptcy case.[5] The Voluntary Petition and the Schedules of Assets and Liabilities and Statement of Financial Affairs were signed by Sabella, as "Managing Member of Managing Member" or "Authorized Agent."[6] Trustee was thereafter appointed. Soon after, Trustee filed a notice changing the case from a no-asset case to an asset case.[7]

It is an understatement to say that from the commencement of the bankruptcy case there has been significant and continuing animosity between the parties. Trustee accuses SWZ of inappropriately foreclosing on Debtor's assets prior to placing Debtor in a chapter 7 bankruptcy proceeding leaving nothing for unsecured creditors. Movants accuse Trustee of over-litigating the case, seeking millions of dollars in recovery on scheduled claims of about $200,000. Movants also accuse Trustee of improperly taking Debtor's mail, which Movants

---

[4] *See e.g.*, *In re United Tax Grp., LLC*, Civ. No. 18-93-LPS, 2018 WL 1187395 (D. Del. Mar. 7, 2018) (Stark, C.J.); *Welke v. Miller*, Civ. No. 16-CV-1323, 2018 WL 385185 (D. Del. Jan. 11, 2018) (Conner, C.J.); Order Regarding Standing with Respect to Motion Pursuant to 11 U.S.C. § 324 for Removal of Trustee, ECF No. 199; Memorandum Order Granting Cross-Motion to Amend and Denying Motion to Dismiss, Adv. No. 16-50088, ECF No. 51; *In re United Tax Grp., LLC*, No. 14-10486 (LSS), 2018 WL 1135496 (Bankr. D. Del. Feb. 28, 2018); *In re United Tax Grp., LLC*, No. 14-10486 (LSS), 2016 WL 7235622 (Bankr. D. Del. Dec. 13, 2016); Memorandum Order Denying Motion to Dismiss Bankruptcy Case, ECF No. 102.

[5] Trustee Ex. 1.

[6] Trustee Exs. 1, 2, 3.

[7] Notice of Change from No-Asset to Asset and Request to the Clerk to Fix Bar Date to File Claims Against the Estate, ECF No. 14.

assert belonged to SWZ after its pre-bankruptcy foreclosure and was necessary for SWZ to maximize recoveries on the foreclosed assets (i.e. contracts with taxpayer clients).

On June 25, 2015, Trustee filed an adversary proceeding against SWZ, Tax Help, Allerand and Sabella to avoid preferences and fraudulent conveyances and seeking damages of $3,000,000.[8] On March 3, 2016, Trustee filed a separate complaint against Welke also seeking to avoid preferences and fraudulent conveyances totaling $821,402.69.[9] In response to one or both of these suits, Certain Movants took multiple actions.

First, on March 30, 2016, SWZ filed a motion to dismiss the bankruptcy case.[10] The grounds for the motion to dismiss were much the same as argued in the Removal Motion: Trustee was abusing his position and acting in bad faith in pursuing the adversary proceedings and had converted SWZ's property (Debtor's mail). Further, and notwithstanding that Sabella signed the voluntary bankruptcy proceeding, SWZ (of which Sabella is a member) argued that the case was essentially a two-party dispute between Debtor and Sarah Wonders, a former United Tax employee. After briefing and an evidentiary hearing, I denied the motion to dismiss on the narrow ground that SWZ lacked standing to bring the motion.[11]

Second, also on March 30, 2016, Certain Movants filed a motion ("*Barton* Motion") for leave to file a complaint against Trustee, in his capacity as such, in Florida state court seeking damages for conversion and intentional interference in business relationships based

---

[8] SWZ Compl., Adv. No. 15-50880, ECF No. 1.
[9] Movants Ex. 11; Welke Compl., Adv. No. 16-50088, ECF No. 1.
[10] Interested Party SWZ Financial II, LLC's Motion for an Order Dismissing Chapter 7 Bankruptcy Case, ECF No. 47.
[11] Memorandum Order Denying Motion to Dismiss Bankruptcy Case, ECF No. 102.

on Trustee's redirection of Debtor's mail at the commencement of these bankruptcy cases.[12]

After an evidentiary hearing, I denied the *Barton* Motion concluding that Certain Movants

needed my permission to bring any suit against Trustee, denying the request to bring the suit

in Florida and instead requiring any suit against Trustee be filed in this court.[13]

Third, on April 28, 2016, Sabella, individually, SWZ and Allerand sent a letter

(which they styled as a complaint against Trustee) to the Assistant United States Trustee for

Region 3, requesting the removal of Trustee from the chapter 7 trustee panel for the District

of Delaware.[14] The fourteen page letter contained complaints about Trustee's conduct with

respect to the filing of the adversary proceedings and Debtor's mail as well as his conduct at

the § 341 meeting of creditors.[15] Those Movants also complained about the conduct of

Trustee's assistant (Louann Cromley) regarding her interaction with a process server

attempting to serve a subpoena related to the redirection of Debtor's mail.[16] Trustee

responded to the Sabella Letter to UST on May 18, 2016.[17] After an investigation, on June

13, 2016, the Office of the United States Trustee ("UST") determined that removal of

Trustee from the chapter 7 panel was unwarranted.[18]

---

[12] ECF No. 20, Adv. Pro. No. 15-50880. Defendants were granted permission to withdraw the *Barton* Motion in the adversary proceeding and refile it in the main case, which they did.

[13] *See* Bench Ruling, Dec. 28, 2017 Tr., ECF No. 162 ("*Barton* Ruling"); Order, ECF No. 172. This ruling was affirmed on appeal. *In re United Tax Grp., LLC*, Civ. No. 18-93-LPS, 2018 WL 1187395 (D. Del. Mar. 7, 2018) (Stark, C.J.). One week later, Certain Movants filed an adversary proceeding against Miller, individually. Adv. Pro. No. 18-50315.

[14] Movants Ex. 32 (000103-000118); Trustee Ex. 9 ("Sabella Letter to UST").

[15] *Id.* at 2–3.

[16] *Id.*

[17] Movants Ex. 33; Trustee Ex. 21 ("Trustee Letter to UST").

[18] Movants Ex. 32 (labeled Movants 000119-120); Trustee Ex. 20. The UST rejected the allegation that Trustee's conduct at the § 341 meeting was inappropriate, concluding that Trustee's questioning of Sabella "amounted to diligent cross examination." *Id.* at 2. He also concluded that Trustee did not influence his assistant's interaction with a process server. As for Trustee's conduct in the adversary proceedings, the UST declined to consider that issue as the adversary proceedings were pending before the court.

Fourth, on June 7, 2016, SWZ and Tax Help sued Trustee's accounting firm, Miller Coffey Tate, LLP, in a Florida state court.[19]  In that suit, plaintiffs alleged tortious interference with a contractual right, tortious interference with advantageous business relationship and conversion based primarily on Trustee's redirecting Debtor's mail.

In the back and forth between the parties, I have previously ruled on (and denied or deferred to the conclusion of litigation) a series of motions in which each asked me to impose sanctions against the other.  I have sent the parties to mediation.  And, I have informed the parties that the needless positions taken by each of them detract from any meritorious arguments each may have.

### Procedural History of the Removal Motion

On July 19, 2017, Movants filed the Removal Motion together with an accompanying forty-three-page brief and a lengthy compendium of exhibits,[20] seeking to remove Trustee not just from this bankruptcy case, but from all other cases to which he has been appointed.[21]

On July 25, 2017, Trustee filed a preliminary objection and cross-motion to bifurcate the hearing on the Removal Motion seeking to address the issue of Movants' standing first.[22] I agreed to that request, heard argument on standing, and on May 24, 2018 ruled that

---

[19]  *See e.g.,* Movants Ex. 5; *see also* Florida Compl., ECF No. 77-4.  On July 17, 2017, SWZ and Tax Help amended the complaint to add Louann Cromley as a defendant. *See* Florida Amended Compl., ECF No. 181, at 21–26.

[20]  Opening Brief of Movants in Support of Motion Pursuant to 11 U.S.C. § 324 for Removal of Trustee, ECF No. 127.

[21]  Removal Motion 1.  While by operation of § 324 a trustee removed from one case is automatically removed from all other cases in which he serves unless the Court orders otherwise, Movants specifically requested that relief.

[22]  Preliminary Objection of Trustee to the Motion of Movants and Cross-Motion to (A) Bifurcate Hearing on Motion to Remove and (B) Extend Objection/Response Deadlines in Connection with Motion to Remove, ECF No. 137.

Movants have standing to bring the Removal Motion.[23] In the meantime, Movants moved to supplement their Removal Motion on May 7, 2018.[24]

On June 28, 2018, at Trustee's request, I held a scheduling conference on the Removal Motion. At the scheduling conference I was informed that the parties had not conferred on scheduling. I was also informed that Movants noticed the deposition ("UST Subpoena")[25] of T. Patrick Tinker, the Assistant United States Trustee for Region 3 seeking both a deposition and documents regarding Trustee's actions in other cases in which he serves as a chapter 7 panel trustee. The Department of Justice, representing the UST with respect to the UST Subpoena, addressed the court with respect to issues raised by the UST Subpoena. At the conclusion of the scheduling conference I determined that discovery should proceed, Trustee should file his substantive response to the Removal Motion, and any actual discovery disputes (with the UST, or otherwise) should be brought to me in a concrete and regular fashion.[26]

On October 4, 2018, Movants filed a motion to compel ("Motion to Compel") seeking an order directing Trustee to permit access to documents sought from the UST through the UST supoena.[27] Trustee filed an answer[28] and the Department of Justice filed a

---

[23] Order Regarding Standing with Respect to Motion Pursuant to 11 U.S.C. § 324 for Removal of Trustee, ECF No. 199 ("Order Regarding Standing"). As relevant here, I stated that "As a practical matter, there are no other parties in this case who could bring these matters to my attention—particularly the allegations of false statements." *Id.* at 12.

[24] Movants' Motion to Supplement to [sic] Motion Pursuant to 11 U.S.C. 324 for Removal of Trustee ("Motion to Supplement"), ECF No. 195 (under seal), ECF No. 196 (public version).

[25] Notice of Taking Oral Deposition of and Notice of Subpoena Directed to and Served Upon Assistant U.S. Trustee T. Patrick Tinker, ECF No. 134.

[26] The Motion to Supplement was also raised at the Scheduling Conference with Movants' counsel stating that no responsive papers had been filed and no hearing date had been scheduled. While it does not appear that responsive papers were filed or that I specifically granted or denied this motion, the subsequent briefing on the Removal Motion and Notice of Hearing of the Removal Motion reference this docket. *See e.g.*, ECF No. 247. I also considered the Motion to Supplement in the Order Regarding Standing.

[27] Motion to Compel Production of Subpoenaed Documents and Depositions, ECF No. 223.

limited objection.[29]  On November 1, 2018, I held a hearing on the Motion to Compel at which issues were raised regarding the Privacy Act of 1974,[30] U.S. Department of Justice *Touhy* regulations applicable to the U.S. Trustee program[31] and relevancy.  Trustee's counsel suggested that I deny the Motion to Compel, end discovery and fix a hearing date. Trustee's counsel also suggested that the Removal Motion could be decided as a matter of law and he would be filing his responsive papers on the merits in the near future.  After giving some preliminary views on the Privacy Act issue, I determined to hold the discovery in abeyance pending Trustee's response on the merits of the Removal Motion which I would consider as the equivalent of a Rule 12(b)(6) motion.[32]

On December 21, 2018, Trustee filed his opening brief on the merits of the Removal Motion together with Exhibits A–L.[33]  Movants filed their answering brief on February 22, 2019.[34]  Trustee replied on March 15, 2019.[35]

On January 6, 2020, I informed the parties that the Removal Motion could not be determined on the papers, denied the Motion to Compel and set the Removal Motion for a two-day evidentiary hearing.[36]  I also informed the parties that I was reviewing the summary judgment filings in the SWZ adversary proceeding and was "highly skeptical that I will pre-

---

[28] Answer of George L. Miller, Trustee, to the Motion to Compel Production of Subpoenaed Documents and Depositions, ECF No. 227.

[29] United States' Limited Objection to D.I. 223, Motion to Compel Production of Subpoenaed Documents and Depositions, ECF No. 226.

[30] 5 U.S.C. § 552a(b)(11).

[31] *U.S. ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

[32] Motion to Compel Hr'g Tr. 39:13–40:8, 40:17–42:25, November 1, 2018, ECF No. 231.

[33] Opening Brief of Trustee in Response to Movants' Motion Pursuant to 11 U.S.C. § 324 for Removal of Trustee, ECF No. 232.

[34] Answering Brief of Movants in Opposition to Opening Brief of Trustee in Response to Motion Pursuant to 11 U.S.C. § 324 for Removal of Trustee, ECF No. 233.

[35] Reply Memorandum of Trustee in Further Opposition to the Motion to Remove Trustee, ECF No. 235.

[36] Scheduling Hr'g Tr. Jan. 6, 2020, ECF No. 259.

judge any factual issues in the SWZ case in the context of the removal motion.  So, when you're planning, keep that in mind as well.  It strikes me that those are better decided in the SWZ case."[37]  The two-day evidentiary hearing was held on March 9 and March 10, 2020.[38]  The matter is ready for decision.

### *Jurisdiction*

Jurisdiction exists under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(1)(A).  I can enter a final order on this core proceeding consistent with the United States Constitution.

### *Legal Standard: Removal Under Section 324*

After notice and a hearing, a court may remove a trustee for "cause."[39]  "Cause" is not defined in the Bankruptcy Code and instead must be determined on a case-by-case basis.[40]  Cause to remove a trustee includes "trustee incompetence, violation of the trustee's fiduciary duties, misconduct or failure to perform the trustee's duties, or lack of disinterestedness or holding an interest adverse to the estate."[41]  But most courts require that cause be something that both the law and sound public policy recognize as sufficient to warrant removing the trustee, and that relates to and affects the administration of the trustee's office.[42]

---

[37] *Id.* at 13:24–14:3.

[38] Evidentiary Hr'g Tr. 6:15–18, Mar. 9, 2020, ECF No. 270; Evidentiary Hr'g Tr., Mar. 10, 2020, ECF No. 269.

[39] 11 U.S.C. § 324(a).

[40] *In re Morgan*, 375 B.R. 838, 847–48 (B.A.P. 8th Cir. 2007), *aff'd*, 573 F.3d 615 (8th Cir. 2009).

[41] *In re AFI Holding, Inc.*, 530 F.3d 832, 845 (9th Cir. 2008).

[42] *In re Reed*, 178 B.R. 817, 821 (Bankr. D. Ariz. 1995) (stating "cause" must be "something of a substantial nature directly affecting the rights and interests of the public") (quoting *In re Baker*, 38 B.R. 705, 707 (D. Md. 1983)); *In re New Century TRS Holdings, Inc.*, No. 07-10416 (KJC), 2013 WL 12324114, at *5–6 (Bankr. D. Del. July 9, 2013) (quoting *Reed*, 178 B.R. at 821 and finding that trustee's alleged hearsay testimony did not warrant removal because it "affect[ed] potentially only [the holder of a disallowed late-filed claim]'s own interests, not that of any creditor or the estate")

In assessing a trustee's actions and decisions, courts use the business judgment standard; therefore, cause for removal exists only when the trustee "acts in bad faith or unreasonably under the circumstances."[43] Because a chapter 7 trustee has substantial discretion to administer the estate consistent with the business judgment standard, courts will not remove a trustee for mistakes if the judgment is discretionary and reasonable under the circumstances.[44] Moreover, in making the removal decision, a court must consider the best interest of the estate, not merely that of a single complaining movant.[45]

A trustee removed for "cause" in one case will be removed from all other cases in which the trustee is then serving, "unless the court orders otherwise."[46] As such, the removal of a trustee is an extreme remedy, even when a trustee has acted negligently.[47] A movant must make a "strong showing" by at least a preponderance of the evidence "because the effect of removal is deleterious to the continuity of the administration of the estate."[48]

---

(assuming without deciding that § 324 applied to the removal of post-confirmation liquidating trustee involved in the case).

[43] *In re Tres-Ark, Inc.*, 483 B.R. 460, 466 (Bankr. W.D. Tex. 2012); *In re Livore*, No. 08-32423/JHW, 2010, WL 1849322, at *2, *4 (Bankr. D.N.J. May 6, 2010); *see New Century*, 2013 WL 12324114, at *7.

[44] *Livore*, 2010 WL 1849322, at *2; *see New Century*, 2013 WL 12324114, at *7.

[45] *In re Sheehan*, 185 B.R. 819, 824 (Bankr. D. Ariz. 1995); *In re Lundborg*, 110 B.R. 106, 108 (Bankr. D. Conn. 1990); *New Century*, 2013 WL 12324114, at *7; *Livore*, 2010 WL 1849322, at *2.

[46] 11 U.S.C. § 324(b).

[47] *Morgan*, 375 B.R. at 847; *see Tres-Ark*, 483 B.R. at 467 ("This Court recognizes that a motion to remove trustee under Section 324 is a serious matter."); *Sheehan*, 185 B.R. at 822 ("It is clear that removal of a Trustee is an extreme remedy *even where a trustee has acted negligently.*") (emphasis added).

[48] *In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 317 (Bankr. S.D.N.Y. 2016) (internal quotation marks and citations omitted); *see AFI Holding*, 530 F.3d at 845 ("such cause must be supported by specific facts and the party seeking removal has the burden to prove them.'"); *see also In re JMW Auto Sales*, 494 B.R. 877, 889–90 (Bankr. S.D. Tex. 2013); *Tres-Ark*, 483 B.R. at 467; *In re Nettles*, 354 B.R. 90, 92 (Bankr. D.S.C. 2006).

Some courts hold that on issues other than conflicts of interest, the movant must prove actual injury or fraud.[49]

The decision to remove a trustee is within the sound discretion of the bankruptcy court.[50] Courts have found cause to remove a trustee when: (i) a trustee failed to take steps to complete the administration of the estate after an inordinate amount of time;[51] (ii) a trustee made unauthorized allowances to himself, purchased property from the estate for his own benefit and procured loans from the estate;[52] (iii) a trustee failed to appropriately distribute funds and frequently submitted both mathematically and legally defective confirmation orders prejudicing debtors;[53] (iv) a trustee converted funds of the estate and committed other violations of the trustee's fiduciary duty;[54] and (v) a trustee had a conflict of interest.[55]

On the other hand, courts have not found cause to remove a trustee when: (i) a trustee filed a counterclaim to subordinate two creditors' claims in response to their adversary proceeding against him, finding no conflict of interest;[56] (ii) a trustee filed a final report that disclosed in only an indirect fashion her subordinate's theft of estate funds (which the trustee personally reimbursed), concluding that, under the circumstances of the case, the final report was not patently false, the trustee's explanation was sufficient and any mistakes were harmless;[57] (iii) a trustee acted reasonably in determining not to investigate

---

[49] *In re Syntax-Brillian Corp.*, 554 B.R. 723, 729 (Bankr. D. Del. 2016); *see In re BH & P, Inc.*, 949 F.2d 1300, 1312–13 (3d Cir. 1991).
[50] *BH & P*, 949 F.2d at 1313.
[51] *In re Mira-Pak, Inc.*, 72 B.R. 430, 431 (Bankr. S.D. Tex. 1987) (under Bankruptcy Act).
[52] *In re Stephens & Co.*, 30 F.2d 725, 725–26 (S.D. Cal. 1928) (under Bankruptcy Act).
[53] *In re Drinkwater*, 178 B.R. 590, 591–92, 595, 597 (Bankr. D. Mass. 1995).
[54] *In re Vega,* 102 B.R. 552, 553–54 (Bankr. N.D. Tex. 1989).
[55] *AFI Holding*, 530 F.3d at 849–50.
[56] *Tres-Ark*, 483 B.R. at 469–70.
[57] *Sheehan*, 185 B.R. at 821–24.

certain claims against the estate as no useful purpose would be served for there would be no

distribution to creditors;[58] and (iv) a trustee continued possessing non-debtors' documents

found on debtor's premises because the acquisition was not unlawful.[59]

*Analysis*

In their filings, Movants assert multiple intertwined categories of reasons why

Trustee should be removed, including alleging that: (i) Trustee made numerous false

statements in this case; (ii) Trustee failed to take possession of certain documents (and made

false statements related thereto); (iii) Trustee attempted to charge the estate for a 2014

personal excursion to Florida; (iv) Trustee has conflicts of interest; (v) Trustee showed

incompetency and/or unwillingness to perform trustee duties and "abuse of office;" (vi)

Trustee filed "uninvestigated and unmeritorious" adversary proceedings against Movants

and demanded inflated damages; and (vii) Trustee converted SWZ's mail.

At the hearing, Movant's counsel narrowed the issues that it proceeded on.

Specifically, Movant's counsel stated it was proceeding on:

- material misrepresentations of fact with respect to (a) the failure to investigate claims against Welke before filing the Welke adversary proceeding, (b) ownership of SWZ, (c) Cromley's employment status and her role as assistant to Trustee; and (d) Sabella's refusal to participate in a Rule 2004 examination;

- the filing of the Welke adversary proceeding and in particular the fraudulent transfer claims that were subsequently "removed" from the adversary proceeding, Trustee's intent to intimidate, coerce and harass Welke with respect to those claims and the timing of the filing of the suit;

- hostile conduct at the § 341 meeting;

---

[58] *Lundborg*, 110 B.R. at 109–10.
[59] *SS Farms, LLC v. Sharp*, No. 2:09-CV-02942-MCE, 2010 WL 1558682, at *1, *4 (E.D. Cal. Apr. 19, 2010).

- Trustee's visit to Debtor's offices in 2014, leisure activities engaged in during that trip and "whether or not there was ever supposed to be administrative expenses incurred to that with respect to the estate;"

- use of Trustee's counsel to defend the *Barton* Motion; and

- Trustee's alleged improper settlement overtures.[60]

As can be seen from the above, Movants chose not to move forward with their allegations regarding the mail, and limited the commencement of "uninvestigated and unmeritorious" adversary proceedings to the Welke adversary proceeding. Movants' counsel explained: "With respect to adversary proceeding number 18- 50315 which is also still pending, we're not moving forward with claims regarding the interference with the mail. These were all claims that we believe were part of the totality of the circumstances showing bad faith advised on the part of Trustee but we understand from your judge's order not to move forward with those."[61]

In this Memorandum, I will address only those allegations as to which evidence was presented at the hearing. Any bases not addressed were either devoid of evidence or the evidence was so scant that it does not merit discussion much less removal.

---

[60] Mar. 9 Hr'g Tr. 7:8–8:21.

[61] Mar. 9 Hr'g Tr. 7:1–7. While my comments at the January 6, 2020 hearing were specifically directed to the summary judgment briefing in Adversary Proceeding 15-50880 (*Miller v. SWZ Financial, II LLC, et al*), counsel apparently understood the comments to be directed to all litigation between the parties, or at least all involving SWZ. Nonetheless, given the extensive findings of fact in my *Barton* Ruling (Hr'g Tr. 16:2–19:8) and Chief Judge Stark's Memorandum affirming my decision, *In re United Tax Grp., LLC*, Civ. No. 18-93-LPS, 2018 WL 1187395 (D. Del. Mar. 7, 2018) (Stark, J.), I would not remove Trustee based on his actions in relation to the mail. I also note that Movants have not brought any motion seeking return of the mail either before they brought the *Barton* Motion or in the more than two years since my ruling on that motion.

I.    *Alleged False Statements*

a. **Alleged Misrepresentation of Louann Cromley's Employment Status**

In their submissions, Movants allege that either Trustee or Miller Coffey Tate, LLP

("MCT")[62] made false statements regarding Cromley's employment status.  Movants point

to one sentence in each of two separate statements made for this proposition.  I have placed

the isolated statements in fuller context and have used bold typeface to indicate the

statements at issue:

| Miller in his May 18, 2016 deposition in Adv. Pro. No. 15-50880 | Counsel for Miller Coffee Tate, LLP (in Florida action) |
|---|---|
| Q.    Do you have an employee by the name of Louann Cromley?<br>A.    What about her?<br>Q.    Do you have an employee by that name?<br>A.    Miller Coffey Tate does.<br>Q.    Do you know if she signs emails as assistant to the trustee?<br>A.    She may.<br>Q.    Okay. So does she assist you with trustee matters?<br>A.    She is my assistant; I direct her what to do. She doesn't have any decision-making authority.<br>Q.    Does she take the mail -- is she one of the people who takes the mail to you?<br>A.    She only would touch the mail for Miller Coffey Tate. She would follow the procedure I described earlier, only if everybody else is on vacation, I mean, of the clerical staff in the firm.<br>Q.    And how many people on the clerical staff?<br>A.    We used to have two, now we have three.  So Doreen would go on vacation, Doreen does the work today, but the mail you are talking about was somebody else four year ago -- two years ago, sorry.<br>Q.    And do you know who that would have been?<br>A.    I think her name was Danielle.<br>Q.    Do you have a last name?<br>A.    No clue.<br>Q.    When did Louann Cromley start?<br>A.    When she started working for Miller Coffey Tate?<br>Q.    Yes.<br>A.    A long time ago.<br>Q.    Has she assisted you as trustee since she started working at Miller Coffey Tate? | In the adversary proceeding, the Plaintiffs sought—but the Bankruptcy Court did not grant—leave to sue Trustee Miller in Florida for conversion and intentional interference with a business relationship based on Trustee Miller's performance of his trustee duties and use of the Department of Justice's required procedures to forward the debtor's mail.  The Plaintiffs are now attempting to proceed with those claims without obtaining the bankruptcy court's leave by suing MCT in this action.  MCT is an accounting firm in which George L. Miller is a member, but Mr. Miller's services for MCT are separate from and do not include his employment as a panel trustee is chapter bankruptcies.<br><br>In this action, the Plaintiffs [SWZ and Tax Help] are seeking to hold MCT liable for actions allegedly taken by Louann Cromley in her capacity as a trustee assistant and while being supervised by trustee Miller in the performance of his duties **and not under the employment and supervision of MCT**.[64] |

---

[62]  Miller is a partner of Miller Coffee Tate, LLP.

[64]  Movants Ex. 5, at 2.

| | |
|---|---|
| A.  She doesn't assist the U.S. Trustee. <br> Q.  You as the trustee, not the U.S. Trustee. <br> A.  Oh, okay. I have had other trustee assistants, she is like my fourth. But I took her from – she was on the professional staff of Miller Coffey Tate, **and I asked her as an employee of Miller Coffey Tate** to take the position of a previous assistant.[63] | |

In the same deposition cited above (and in proximity to the statement cited above), Miller explains that he has walled himself off from the Florida litigation against his firm.[65]

I note some difference in these two statements regarding whether Cromley is employed by Trustee as the chapter 7 trustee, or MCT although, as shown by the context, the statements refer to two different points in time and two different situations. Regardless, given Trustee's lack of involvement in the Florida litigation, I will not attribute to Trustee statements made by counsel for MCT in the Florida litigation for purposes of this Removal Motion.

In an attempt to buttress their argument on Cromley's employment status and the above statements, Movants called as witnesses in their affirmative case both Cromley and Tomlin, another partner of MCT. Cromley testified that she spent the majority of her time

---

[63] Trustee Dep. Tr. 154:21–156:13, ECF No. 127-1, Ex. A. Miller's deposition was not offered as an exhibit or admitted into the record of the Removal Motion hearing (although it was marked as a potential exhibit), but I will address it anyway because Cromley's status as an employee loomed large in the filings and was the subject of testimony at the hearing.

[65] Specifically, Miller testified:

    **By Mr. Williams:**
    Q. Is Miller Coffey Tate paying for [Cromley's] attorney [in the Florida litigation]?
    **By Mr. Miller:**
    A. You will have to ask – I'm not involved in that part. That's between her and other people.
    Q. You are the Miller of Miller Coffey Tate; correct?
    A. I am. And I refuse to get involved in that.
    Q. Okay.
    A. I built what is known as – what you guys refer to as the Chinese wall. So I am not involved in any of those discussions.
Trustee Dep. Tr. 157:23–158:8, ECF No. 127-1, Ex. A.

working as an assistant to Trustee.[66] Tomlin testified that MCT was Cromley's employer and he signed her paychecks.[67] Tomlin also stated his understanding of the above quoted sentence in the Florida litigation is that Cromley was under the supervision of Trustee and not MCT when taking actions in the in the United Tax bankruptcy case.[68]

The uncontroverted testimony shows that Trustee gave truthful testimony in his May 18, 2016 deposition that Cromley was an employee of MCT. Indeed, taken in context, Trustee's testimony is that Cromley is his fourth trustee assistant, he supervises her and she is on the professional staff of MCT. This deposition testimony is also consistent with Tomlin's testimony at the hearing.

The statement made by MCT in the Florida litigation may not be precise, but taken in context, may not be untruthful. Even if it were incorrect, however, it is not a statement made by Trustee. Movants cite no caselaw for the proposition that statements made in court filings by counsel to a partnership may be attributable to each partner or that even if they could, such statements should be attributable to a partner that was walled off from the litigation. Further, there is no basis on which to conclude that Trustee misrepresented a fact to this court.

---

[66] Mar. 9 Hr'g Tr. 18:12–14.
[67] Mar. 9 Hr'g Tr. 31:22–32:6.
[68] Mar. 9 Hr'g Tr. 34:17–19, 35:2–6.

### b. Alleged Misrepresentation of SWZ Ownership

Movants also assert that Trustee misrepresented SWZ ownership in his adversary proceedings complaints.  The alleged untrue statement is:

> Per testimony of Sabella, the manager of Allerand, at the meeting of creditors (defined below), SWZ is an entity that is 50% owned by Allerand (the Debtor's managing member) and 50% owned by another entity owned and/or controlled by Sabella.[69]

Movants introduced no evidence on which persons or entities own SWZ.  When Sabella was asked whether he was a member of SWZ, he testified "I think it may be through another entity, but beneficially, I did have an interest in it."[70]  This less than definitive testimony provides no basis to find that Trustee's statement—or, more accurately, his counsel's statement—is false.[71]

### c. Alleged Misrepresentation Regarding Rule 2004 Examination

Movants further assert that Trustee falsely testified in deposition that Sabella would not agree to cooperate in an amicable Rule 2004 examination.[72]  Movants introduced no evidence showing any misrepresentation.  Movants point to the transcript of the § 341 meeting as evidence in support of the asserted falsehood.  At the § 341 meeting, Sabella testified that he would have to speak to a lawyer in response to Trustee's request for a Rule 2004 examination.[73]  Movants' further evidence is that Trustee did not follow up with a Rule 2004 examination after the § 341 meeting.[74]

---

[69] SWZ Compl. ¶ 13, at 3, Adv. No. 15-50880, ECF No. 1; *see* Welke Compl. ¶ 9, at 2–3, Adv. No. 16-50088, ECF No. 1; Am. Welke Compl. ¶ 9, at 2–3, Adv. No. 16-50088, ECF No. 41.
[70] Mar. 10 Hr'g Tr. 120:6–11.
[71] Even if this statement was false, it is not materially sufficient to warrant the sanction of removal. And, Movants have not shown how they were harmed by this statement, if false.
[72] May 2016 Trustee Dep. Tr. 36:17–22, ECF No. 127-1, Ex. A.
[73] Trustee Ex. 4, 62:19–63:11; Mar. 10 Hr'g Tr. 87:15–88:3.
[74] *Id.*

16

I will not remove a trustee based on his interpretation of a witness's willingness to cooperate. I also note that Trustee has not used any alleged unwillingness as a basis for any relief in this court.

### d. Alleged Misrepresentation Regarding Welke Adversary Proceeding

Movants contend that Trustee falsely testified in one of his depositions that "Sabella testified about the American Express transactions with Welke is that he would pay the old bills that Welke would charge business expenses to his account, and the debtor would pay him [Welke], you know, when cash flow allowed."[75] Movants claim that Sabella never made any such statement.

At the hearing, the only evidence presented was Sabella's testimony that he did not discuss the American Express card with Trustee or identify Welke as its owner during Trustee's 2014 visit to Debtor's facility,[76] and that he never testified to or made a statement to that effect because it was not a matter that was within his general knowledge.[77] Trustee, however, testified that his recollection is that Sabella did testify regarding payments on the American Express card although it could have been a discussion (rather than testimony) at either the § 341 meeting or his 2014 visit to Florida or it could have been in pleadings.[78]

The evidence is in equipoise regarding whether Sabella made statements regarding the American Express account. Even if Trustee's recollection is incorrect, however, his statement does not warrant the extreme remedy of removal.

---

[75] May 2016 Trustee Dep. Tr. 180:23–181:3, ECF No. 127–1, Ex. A.
[76] Mar. 10 Hr'g Tr. 74:3–14.
[77] Mar. 10 Hr'g Tr. 82:23–83:7.
[78] Mar. 10 Hr'g Tr. 40:10–41:16.

**e. Alleged Misrepresentation in Letter to Assistant United States Attorney**

On May 18, 2016, Trustee wrote the Trustee Letter to UST in response to the Sabella

Letter to UST. At the hearing, Movants spent extensive time examining the genesis of one

sentence in the Trustee Letter to UST. The sentence reads: "Sabella and UTG [Debtor]

were aware of the Wonders' claim prior to that date [June 20, 2012]."[79] Movants contend

that Sabella was not aware of Wonders' claim prior to June 20, 2012 and so that portion of

Trustee's statement is false.[80]

It is unclear why this one portion of a statement in a twenty-one page letter is so

important to Movants other than it attributes knowledge to Sabella that he contends he did

not have until sometime later. Trustee testified that he believed Sabella was aware of

Wonders' complaints prior to June 2012.[81] Sabella testified he was not.[82]

Once, again, I have no clear way to know whether the statement is true or not. The

evidence is in equipose. And, as Trustee's counsel argued, the assertion that one statement

(or portion of a statement) is false suggests that all other statements in the twenty-one page

Trustee Letter to UST are true. I will not place such an outsized role on the importance of

one sentence even if it is not entirely accurate.[83] On this record, I cannot conclude that

Sabella did not know of Wonders' complaints at the stated time or that any misstatement of

his knowledge warrants removal of the Trustee.

---

[79] Movants' Ex. 33 p. 5; *see* Mar. 10 Hr'g Tr. 186:13–192:25
[80] Movants do not contend that Debtor was unaware of Wonders' claim at that time. Mar. 10 Hr'g Tr. 239:16–240:8.
[81] Mar. 10 Hr'g Tr. 186:7–12, 188:5–7; 190:8–11.
[82] Mar. 10 Hr'g Tr. 90:3–9. The dates were not clear in the testimony, and Movants (marked) Exhibit 50 was not admitted into evidence. So, I am giving Movants the benefit of the doubt with respect to Sabella's denial of knowledge.
[83] Once again, I note that the timing Sabella's personal knowledge of Wonders' complaints has not been the focus of any hearing before me or thus far been significant in any adversary proceeding.

*Conclusion on Alleged Misrepresentations*

Movants ask me to remove Trustee based on statements with which they disagree. I cannot conclude that any of the above statements are false, much less made with an intent to deceive the court. Nor do I see any particular pattern as Movants argue. Neither separately, nor together, do these statements merit the extreme remedy of removal.

To make a point, during Sabella's cross-examination, Trustee's counsel pointed out various statements made in writing by Sabella under oath (or under his signature) that contained misstatements of fact or characterizations of information. In those instances, Sabella testified that people make mistakes,[84] or that he might have said something "in a general sense" even if "speaking technically" his statement was not correct.[85]

While Sabella's statements are not an issue here, Sabella's assessment is correct. People make mistakes, including Sabella and Trustee. People also misremember, especially events that happened many years ago. To the extent that any of Trustee's statements discussed above were incorrect, Movants have not proven by a preponderance of the evidence that those statements were anything other than mistaken, characterizations or generalities. Movants have not met their burden to show that such statements rise to the level of falsehoods or statements for which Trustee should be removed.

---

[84] *See e.g.,* Mar. 10 Hr'g. Tr. 100:8–22 (suite number listed on petition was not correct; "This is obviously just a mistake."); Mar. 10 Hr'g Tr. 112:1–10 ("People make mistakes all the time. I in good faith believed everything in the letter to be factually correct"); Mar. 10 Hr'g Tr. 112:3–15:22 (discussing Sabella's statement that "scores" of taxpayer suffered tax penalties); Mar. 10 Hr'g Tr. 116:8–117:11 (stating that a letter from trustee's law firm "sounds like an accusation to me.")
[85] Mar. 10 Hr'g Tr. 117:12–19 (regarding use of word "foreclosure" rather than describing prepetition transaction as a "consensual transaction.")

## II.   Trustee's Visits to Debtor's Offices

Four witnesses testified at the hearing about Debtors' offices. The apparent purpose of the testimony was to show that Trustee lied when he said that there were no boxes of documents in Debtors' offices when he visited in 2014 and, again, in 2016. Movants contend that this lie as well as Trustee's failure to retrieve the boxes of documents serves as grounds for removal.

There are some facts upon which the parties agree and for which there is unrefuted evidence. In 2014, Debtors leased office space on the second floor of a two story office building located in Jupiter, Florida ("Office Building"). The Office Building is owned by Allerand 10 W 10 Company. Brenda Kay Caliendo is (and was during all relevant times) the building manager of the Office Building. She testified that she is employed by Sabella. In May 2016, Movants' counsel notified Trustee's counsel that there were dozens of boxes of documents located in Debtors' former offices. After an exchange between counsel, in June, 2016 Trustee arranged for 161 boxes of Debtor's documents to be picked up from the Office Building.

The parties disagree about all other details. The disputed details include exactly what suite number(s) were assigned to Debtors' space on the second floor. The two schematics of the second floor of the Office Building that Movants' introduced into evidence do not reflect the suite numbers or possibly even the space at the relevant time periods.[86] Caliendo and Sabella attempted to clarify, but the testimony was confusing at best.[87] Debtor's bankruptcy petition lists Suite 203 as Debtors' street address.[88] Caliendo testified

---

[86] Movants Ex. 6 (A), (C); Mar. 9 Hr'g Tr. 69:5-13.
[87] *See e.g.*, Mar. 10 Hr'g Tr. 98:23–100:7.
[88] Trustee Ex. 1; *see also* Mar. 10 Hr'g Tr. 100:16–101:2.

that Debtor occupied suites 201 and 203 (later changed to 205).[89]  Welke and Sabella

testified that Debtors' former offices were suites 201 and 205.[90]  Trustee testified that on his

first visit he could not go into Suite 201.[91]  And, both Welke and Sabella also testified that

the suite numbers were confusing since the numbers changed frequently.[92]

　　　The disputed details also include when (and, if) a doorway between two suites (that,

presumably, Debtor occupied) was boarded up.  Caliendo testified that a center wall with

French doors containing glass panes was boarded up sometime in 2015 to accommodate a

new tenant.[93]  Welke and Sabella also testified that a doorway between two suites was

boarded up in 2015 (after Trustee's 2014 visit).[94]  But, the documentary evidence Movants'

submitted to corroborate Caliendo's testimony did not reflect charges for drywall or other

materials necessary to board up a door.[95]

　　　The disputed details also include the sublease tenants.  Caliendo, Welke and Sabella

testified that there was no tenant during Trustee's 2014 visit.[96]  But, Welke and Caliendo

disagreed on whether there were one or two tenants when Trustee visited the Office

Building in 2016.[97]  Trustee testified as to a tenant in Suite 201 during his first visit.[98]

　　　Finally, the disputed details also include whether there were boxes in Debtors' offices

during Trustee's visits and if so, how many and where.  Welke and Sabella testified that

---

[89]  Mar. 9 Hr'g Tr. 46:9–14; 47:12–25 (the schematic represents the layout, but the suite numbers are reversed).
[90]  Mar. 9 Hr'g Tr. 120:16–121:1; Mar. 10 Hr'g Tr. 74:20–21, 99:19–100:7.
[91]  Mar. 10 Hr'g Tr. 159:14–21.
[92]  Mar. 9 Hr'g Tr.146:13–20; Mar. 10 Hr'g Tr. 99:19–100:7.
[93]  Mar. 9 Hr'g Tr. 57:6–58:6; 72:25–73:6, 74:6–75:15.
[94]  Mar. 9 Hr'g Tr. 109:12–17, 124:25–125:18; Mar. 10 Hr'g Tr. 78:9–21.
[95]  Movants Ex. 6(D), *see also* Mar. 9 Hr'g Tr. 77:18–79:8.
[96]  *See e.g.*, Mar. 9 Hr'g Tr. 87:4–8, 123: 5–9; Mar. 10 Hr'g Tr. 78:9–21.
[97]  Mar. 9 Hr'g Tr. 125:21–126:2.
[98]  Mar. 10 Hr'g Tr. 159:14–21.

there were boxes everywhere on Debtor's premises during Trustee's 2014 visit.[99]  But, Caliendo testified there were only 30 to 40 boxes left in Debtor's space when Debtor vacated the offices in 2013.[100]  Trustee testified at least equally convincingly that he saw no boxes of documents on his visits.[101]  Further, Trustee testified that Debtor's counsel had advised him before his 2014 visit that there were no records left at Debtor's facility.[102]

Based on the evidence presented, I cannot conclude that Trustee has lied regarding his visits to the Office Building or with respect to the boxes of documents.  My contemporaneous thoughts on Movant's testimony as it was being adduced was that it was confusing.  My review of the transcripts brings no more clarity to the testimony.  Movants did not establish that Trustee lied about what office space he walked through or the condition of the space.

As for the boxes of documents, while it makes no sense that Movants removed them from the premises (and Trustee did not testify that Movants did), I cannot conclude that 161 boxes were clearly visible to Trustee on his walks through the premises.  Further, Trustee arranged for the pickup of the boxes of documents as soon as his counsel received an email concerning them.  At every turn in this bankruptcy case, Movants have raised the fact that Trustee immediately redirected all Debtor mail upon his appointment.  Had Trustee known of the existence of the boxes of documents sooner, there is no doubt he would have removed them sooner.[103]

---

[99]  Mar. 9 Hr'g Tr. 122: 9–14; Mar. 10 Hr'g Tr. 75:11–18.
[100]  Mar. 9 Hr'g Tr. 52:18–23.
[101]  Mar. 10 Hr'g Tr. 23:23–24:9, 28:19–23, 29:4–14.
[102]  Mar. 10 Hr'g Tr. 20:6–25, 54:22–56:2; *see also* Trustee Ex. 35.
[103]  Trustee testified that it was his practice when first assigned to a case to find out whether he needs to visit the premises immediately, including to secure documents. *Id.*

As for Trustee's characterization that he was forced to pick up the 161 boxes of documents within thirty days of notification, Movant's counsel's email bears out that this is a logical characterization.[104] Any assertion this is untrue is unfounded.

Given the confusing evidence, any inconsistencies with respect to the boxes of documents cannot form a basis to remove Trustee.

### III.    Alleged Attempt to Charge the Estate for Personal Excursion

Cause for removal exists when a trustee breaches his fiduciary duty by intentionally charging the estate for expenses serving no legitimate estate purpose.[105] Movants assert that Trustee visited Debtor's office in March 2014 during a multi-day leisure trip and charged or attempted to charge the estate for personal expenses related to that trip.

Movants introduced no evidence indicating Trustee charged or attempted to charge the estate for this trip. The evidence is that Trustee has a home in Florida.[106] He visited Debtor's offices, which are close to his home, in March 2014. Afterwards, Trustee went shooting.[107] Trustee enters his expenses related to the estates he oversees, usually monthly, into a system called Timeslips.[108] There are no charges for the March 2014 trip to Florida in the Timeslips expense report.[109] Trustee did not charge the estate for airfare, hotel or any other activity for that trip. And his uncontradicted testimony was that he did not intend to

---

[104] Trustee Ex. 35.
[105] *In re IFS Fin. Corp.*, 803 F.3d 195, 199–200, 205–06 (5th Cir. 2015) (removing a trustee for intentionally charging the estate for substantial expenses incurred for personal benefit).
[106] Mar. 10 Hr'g Tr. 45:14–25.
[107] Mar. 10 Hr'g Tr. 66:24–67:22.
[108] Mar. 10 Hr'g Tr. 59:22–60:7.
[109] Movants Ex. 48H.

do so—at the time or in the future.[110]  Cromley testified that she did not input Trustee's expenses and does not assist Trustee in doing so.[111]

Cromley did testify, however, that she is familiar with Hill Archive, a firm Trustee uses to store documents, that Hill Archive stores documents for Trustee in connection with United Tax, that she has received invoices from Hill Archive related to United Tax and that she has prepared checks payable to Hill Archive based on those invoices.[112]  There are no expense charges for Hill Archive on Trustee's expense reports.[113]  Trustee's testimony contradicted Cromley's on this point.  Trustee testified that there are no invoices from Hill Archive yet.[114]  But, Trustee's expense items—mileage, parking and photocopies—are all recorded in the Timeslips reports.[115]

Movant's counsel suggests that the lack of entries for charges from Hill Archive suggests that not all expenses for United Tax have been reported and then concludes that Trustee may still charge for his March 2014 trip.  While the testimony on the existence of Hill Archive invoices is inconsistent, there is no evidence that Hill Archive payments would be recorded in Timeships; Cromley was not asked in what system she records payments (as opposed to expenses).  Further, the Handbook for Chapter 7 Trustees provides that a chapter 7 trustee must establish and maintain contemporaneous books for each estate, including a Cash Receipts and Disbursements Record (Form 2).[116]  Consistent with this requirement, while certain of the Timeslips entries reflect expense for external items, such as

---

[110]  Mar. 10 Hr'g Tr. 46:6–19, 59:10–12, 60:8–11, 22–24.
[111]  Mar. 9 Hr'g Tr. 23:11–13.
[112]  Mar. 9 Hr'g Tr. 19:14–21:6.
[113]  Movants Ex. 48H.
[114]  Mar. 10 Hr'g Tr. 19:17–20:6.
[115]  The Timeslips Report reflects either entries made by "George L. Miller" (mileage, parking, photocopies) or by "Administrative" (photocopies, postage, federal express).  Movants Ex. 48H.
[116]  Trustee Ex. 6, 5–1.

24

postage or federal express delivery, none of these Timeslips entries contain any reference to actual payment, such as a check number reflecting an actual disbursement to a third party vendor or reimbursement to MCT.

Based on the evidence, I cannot infer that the lack of Hill Archive charges in Timeslips means that other charges, such as for Trustee's trip to Florida are hidden or might appear in the future.  And, I certainly cannot find or conclude that Trustee intended or intends to charge the bankruptcy estate for his March 2014 trip to Florida.[117]

## IV.    Litigation Against Welke

On March 3, 2016, Trustee sued Welke to avoid $821,402.69 in payments Debtor made to American Express.[118]  In the original complaint, Trustee seeks to avoid the payments as either preferences under the Bankruptcy Code, constructive fraudulent conveyances under the Bankruptcy Code or analogous state law, or payments to an insider under state law.[119]  On December 13, 2016, I granted judgment on the pleadings with leave to amend.[120]

On April 14, 2017, Trustee filed an Amended Complaint seeking to avoid $255,328.91 in payments Debtor made to American Express.  The amended complaint asserts only a preference claim.  All allegations of a constructive fraudulent conveyance have been eliminated.  Welke moved to dismiss the amended complaint.  Trustee filed a

---

[117] Movants counsel also argues that as Trustee is in a "fishbowl" he would have changed his mind about charging the estate for the March 2014 trip.  But, the earliest possible time that Trustee was in a fishbowl was March 30, 2016 (when the Motion to Dismiss and the *Barton* Motion were filed), two years after the expense would have been logged in Timeslips.  Movants presented no evidence that Trustee changed his Timeslips entries.

[118] George L. Miller, Trustee v. Edward Welke, Adv. Pro. 16-50088.

[119] Complaint, Welke Adv. Pro., ECF No. 1.

[120] Welke Adv. Pro., ECF No. 23 (ORDER).  Welke appealed this ruling, which was dismissed on January 11, 2018, Welke Adv. Pro., ECF Nos. 49, 50.

cross-motion to amend along with a proposed second amended complaint.  On April 26, 2018, I granted Trustee's cross-motion to amend and denied Welke's motion to dismiss.[121]

Movants argue that the Welke adversary proceeding was frivolous and that Trustee should be removed because he sued Welke in bad faith without proper investigation.  In particular, Movants argue that Trustee did not perform a Rule 2004 examination prior to filing the Welke adversary proceeding and had no basis to bring the constructive fraudulent conveyance claims as evidenced by the dismissal of those claims.

Movants' evidence demonstrates that: (i) Trustee did not contact Welke before suing him;[122] (ii) Trustee did not review the American Express card statements before suing Welke because he did not have them;[123] (iii) Trustee filed the Welke adversary proceeding shortly after Movants' nominal settlement offer;[124] and (iv) Trustee did not review the discovery in the Welke adversary proceeding until the discovery was over.[125]  The evidence also demonstrates that Trustee reviewed certain transfers made by Debtor, but Trustee relied on counsel to do the investigation, to file the complaint, and to review any discovery.[126]  Further, Welke testified that the American Express card had his name on it and that Debtor paid more than $800,000 on the card.[127]

Based on the evidence presented, I cannot find or conclude that Trustee's decision to sue Welke was so unreasonable as to justify removal.  A trustee has discretion in prosecuting litigation and will not be removed for a mistake in judgment as long as it is

---

[121] Memorandum Order Granting Cross-Motion to Amend and Denying Motion to Dismiss, Adv. Pro. 16-50088, ECF No. 51.  A review of the docket shows that Welke has now moved for summary judgment.
[122] Mar. 9 Hr'g Tr. 138:21–139:16.
[123] Mar. 10 Hr'g Tr. 44:22–24.
[124] Mar. 10 Hr'g Tr. 83:19–84:7.
[125] Mar. 10 Hr'g Tr. 47:2–20.
[126] Mar. 10 Hr'g Tr. 63:19–64:13.
[127] Mar. 9 Hr'g Tr. 140:1–6, 183:15–184:11.

reasonable.[128]  While Trustee determined not to re-plead the constructive fraudulent conveyance claims after I granted Welke's motion to dismiss, this does not serve as grounds for removal.  The preference claims are still pending and I denied a motion to dismiss those claims.

As for the investigation, while a trustee can choose to use Rule 2004 to gather information he is not required to.  And, a potential defendant is not entitled to be served with a Rule 2004 request prior to being sued.[129]

Finally, Movants have brought several motions for sanctions related to Trustee's various lawsuits.  If the Welke lawsuit was improperly filed, sanctions can be granted in that context.  But, it goes without saying that granting a motion to dismiss a portion of a lawsuit does not necessarily lead to imposition of sanctions.

### V.    *Trustee's Alleged Improper Settlement Overtures.*

Movants' Exhibit 48(k) is a June 6, 2017 email from Trustee's counsel to Movants' counsel following up on an earlier phone call regarding two motions Trustee was planning to file seeking sanctions against Movants.  The email reflects that Trustee was willing to accept $150,000 to avoid the filing of those two motions if the offer was accepted within 24 hours.  At the hearing, Trustee acknowledged the email, and that his counsel thereafter filed at least one motion for sanctions.[130]

During argument, I asked Movants' counsel the import of these actions as he suggested some impropriety under some unspecified professional rules of responsibility.  Ultimately, Movants' counsel suggested these actions show bias against his clients in taking

---

[128] *In re EquiMed, Inc.*, 267 B.R. 530, 534 (D. Md. 2001); *Lundborg*, 110 B.R. at 108.
[129] I have to observe that this is the first time in my experience (both as a practitioner and a judge) that the target of a lawsuit has complained that a Rule 2004 examination was not taken prior to commencement of a lawsuit.
[130] Mar. 10 Hr'g Tr. 12:3–13:25.

overzealous positions in the bankruptcy case.[131]  I see no basis to remove Trustee based on this email from counsel.

## VI.    *Alleged Conflicts of Interest*

Movants contend that Trustee should be removed for conflicts of interest because: (i) the estate may have claims against Trustee for Welke's potential indemnification claim; and (ii) Trustee used the estate's attorney in defending the *Barton* Motion.

A chapter 7 trustee must be a "disinterested person."[132]  As such, a trustee shall not "have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."[133]  However, a trustee's lack of disinterestedness does not automatically mandate removal for "cause."[134]  Instead, a court evaluates "prospectively on a case-by-case basis" whether a trustee's alleged lack of disinterestedness can be tolerated under the circumstances by examining "'the full panoply of events and elements.'"[135]  "Not every conceivable conflict must result in sending [the trustee] away," and the Third Circuit clearly admonished that "[h]orrible imaginings alone cannot be allowed to carry the day" to remove a trustee.[136]  Crucially, a court must decide whether there is "a sufficient threat of material adversity to warrant [the] prophylactic action" of removal.[137]

As to Trustee's use of the estate's counsel defending the *Barton* Motion, I conclude this does not justify removal.  In a motion based on *Barton*, a party moves to "obtain leave

---

[131]  Mar. 10 Hr'g Tr. 247:10–251:6.
[132]  *See* 11 U.S.C. §§ 701(a), 702(d), 101(14).
[133]  11 U.S.C. § 101(14)(C).
[134]  *BH & P*, 949 F.2d at 1309.
[135]  *Id.* at 1312–13 (quoting *In re Martin*, 817 F.2d 175, 181–83 (1st Cir. 1987)).
[136]  *Id.* at 1313 (quoting *Martin*, 817 F.2d at 183).
[137]  *Id.* at 1312 (quoting *Martin*, 817 F.2d at 182).

of the bankruptcy court before it brings an action in another forum against a bankruptcy

trustee for acts done in the trustee's official capacity."[138] Therefore, using the estate's

attorney to defend a *Barton* motion does not create adversity to the estate, much less

constitute material adversity sufficient to justify the extreme remedy of removal.[139]

As to, Welke's potential indemnification claim, Movants' evidence merely shows

that: (i) Welke entered into a pre-petition agreement with Debtor, possibly entitling him to

indemnification;[140] and (ii) Welke filed a proof of claim in the amount of $5,363.50 for fees

incurred in defending the Welke adversary proceeding.[141] The filing of a proof of claim by

an individual entitled to indemnification based on a lawsuit filed by a chapter 7 trustee

cannot create a conflict-of-interest sufficient to remove a chapter 7 trustee. If that were the

case, chapter 7 trustees would often be unable to sue former officers and directors.[142]

---

[138] *In re VistaCare Grp., LLC*, 678 F.3d 218, 224 (3d Cir. 2012).

[139] In denying the *Barton* Motion, I found that Trustee acted within his official capacity. *See Barton* Ruling 14:11–17, 23:5–8, ECF No. 162.

[140] Mar. 9 Hr'g Tr. 133:10–18.

[141] Movants' Ex. 15; *see also* Mar. 9 Hr'g Tr. 132:11–23, 133:6–9.

[142] Miller, in his individual capacity, has been sued in this court by SWZ and Tax Help in an adversary proceeding styled *SWZ Financial II, LLC et al. v. George L. Miller, individually*, Adv. Pro. No. 18-50315. In this lawsuit, plaintiffs sue for conversion of mail directed to Debtor and tortious interference with contracts and business relationships related to the mail and/or Miller's communications with taxpayers serviced by Debtors. Miller hired his own counsel to defend his personal interests in the adversary proceeding. In their submissions on the Removal Motion (*see e.g.,* ECF No. 195), Movants contend that Trustee is no longer disinterested because he not only asserted defenses to this lawsuit, but filed counterclaims against plaintiffs for, among other things, malicious prosecution and abuse of process. Movants contend that the counterclaims make Miller adverse to the interest of an equity security holder (*id.* at 2). Movants appear to have abandoned this position as they did not argue it at the hearing or admit the allegedly offending pleading into evidence at the hearing (although it was included in Movants' exhibit list as a possible exhibit). In any event, this would not be grounds for removal. First, as Movants recognize, lack of disinterestedness is not necessarily grounds for removal under § 324 (*id.* at 4–5). Second, while Miller may now be adverse to Tax Help and SWZ, there is no evidence that either are creditors or equity holders. Indeed, in Movants' submissions they concede that Allerand, not SWZ, "owns a membership interest" in Debtor. While Movants also contend that Allerand also "owns a membership interest" in SWZ, there is no transitive property that morphs SWZ into an equity holder of Debtor. So, assuming that having an interest adverse to one equity holder (as opposed to the class of equity security holders (*see* 11 U.S.C. § 101(14(C)) makes one not disinterested, such adversity does not exist here. Further, in

Under questioning at argument, Movants' counsel suggested that the conflicts equate to bias, that is, Movants believe that Trustee holds a bias against them. Perhaps, Sabella's own words best sum up this position:

> Q:    Mr. Sabella, do you consider any of the actions of the [Movants] in the adversary proceedings to be frivolous in this matter?
>
> A    No. They've been characterized that way, but if you sort of try to follow the steps of this case as it has evolved, we came to the Bankruptcy Court essentially hoping for a professional trustee to analyze the facts, which were complicated -- we understood they were complicated -- and conclude as we did, that we -- you know, we didn't do anything wrong, and that there were no real claims here, and that if there were real claims, they could be settled expeditiously and in a fair way.
>
> We came to realize that that just was not going to happen with this Trustee. And I think if you look at sort of every one of the allegedly frivolous things that we've done, cases we've filed, or motions or claims we've made, every single one of them was calculated to end this case. And the idea was that we just were never going to get justice from Mr. Miller.
>
> I can't explain it, but -- and I can't account for the fact that he's such an experienced guy who should really be good at this and should be able to analyze these things and come to the right conclusions. But he can't and hasn't.[143]

In other words, Movants had hoped for a trustee who would share their view that Movants' prepetition actions were above reproach. Instead, they drew a chapter 7 trustee who has taken aggressive postures challenging Movants' prepetition actions and seeking to hold Movants to account. Trustee sees the transaction as problematic, constructively fraudulent and precipitated by Debtor's desire to avoid payment on Wonders' judgment. Whether

---

the context of this case, where SWZ has sued Miller, individually, his firm and his assistant, I would not, without more, remove Trustee because of the assertion of counterclaims.

[143] Mar. 10 Hr'g Tr. 91:2–24. I have already noted here, and previously from the bench in this case, that certain actions taken by Movants distract from any meritorious positions they may have. For example, suing Cromley, an assistant, for filling out a change of address form at Trustee's direction, does not seem calculated to end the case or lead to a right conclusion.

Trustee will ultimately prevail in his some or all of his positions is yet to be determined, but the bringing of lawsuits is not evidence of bias—or at least not impermissible bias.

Accordingly, I do not find a conflict of interest or bias sufficient to remove Trustee.

## VI.    *Alleged Incompetence/Unwillingness to Perform Trustee Duties and "Abuse of Office."*

Movants recast their previously failed allegations into new assertions of incompetence/unwillingness to perform and "abuse of office," seeking to remove Trustee based on their dissatisfaction and disagreement with Trustee's case management and personality.    Movants failed, however, to prove any of their previous allegations, and introduced no evidence to support their new claims of incompetence/unwillingness to perform and "abuse of office."[144] Rather, the evidence is that Trustee diligently performed his duties, including (i) two visits to Debtor's offices, (ii) timely conducting the § 341 meeting, (iii) engaging counsel and (iv) filing two adversary proceedings. There is no evidence to support removing Trustee for not performing his duties; to the contrary, Movants do not like the way Trustee **is performing** his duties.

As for charges of abuse of office, Sabella testified regarding Trustee's conduct at the § 341 meeting.  He characterized Trustee as at first acting in a "businesslike" manner, then in a "firm" manner and ultimately in an "obnoxious, arrogant, difficult and completely disrespectful" manner.[145] A review of the transcript of the § 341 meeting[146] reveals that Trustee was doggedly pursuing lines of questioning, insisting that Sabella assume certain facts and respond to hypothetical questions, and insisting that Sabella answer certain

---

[144] Movants' new accusation proposed at the hearing on Trustee's allegedly hostile conduct during the § 341 meeting arguably falls under this section, but I heard no evidence establishing any hostile conduct by Trustee.  Moreover, this argument was previously addressed to the UST, who has determined that Trustee's behavior during the § 341 meeting constituted diligent cross-examination.

[145] Mar. 10 Hr'g Tr. 86:5–8.

[146] Movants Ex. 21.

questions or assert his 5th Amendment rights. This conduct comports with my general observations that Trustee takes aggressive positions and can be gruff (some might say overbearing). While other chapter 7 trustees might obtain the same information and outcomes by taking a different approach, I cannot conclude that Trustee's mannerisms and conduct constitute an abuse of office or come close to sufficient to remove him from this case or the chapter 7 trustee panel.

**VII.**    *Whether Removal Benefits the Estate*

Finally, in assessing the Removal Motion, I consider whether removal of Trustee is in the best interest of the estate. It is not. This case has been ongoing since 2014. The only active participants in the case are Movants and Trustee. Based on the record and my knowledge of the case, I find that removing Trustee and the appointment of a new chapter 7 trustee will only delay the conclusion of this highly-contentious case and increase the costs for the estate because any new trustee must first familiarize himself with this long-pending case and then dispose of the hotly-contested adversary proceedings.[147] Potentially case dispositive motions have been filed in each adversary proceeding and trial is scheduled in the SWZ adversary proceeding.[148] Asking a new trustee to evaluate the proceedings at this stage, with the possible retention of new counsel, is not beneficial to the estate. I also note that neither Wonders nor any other party unaffiliated with Movants have joined Movants' request.

---

[147] At the hearing, Mr. Tinker expressed the same concern, stating: "[y]ou don't change horses in midstream" and contended that the UST should not be directed to find another chapter 7 trustee to take over this case. Mar. 10 Hr'g Tr. 283:13–284:3.
[148] Trial was postponed once due to the onset of the covid-19 pandemic and after a conference call with the parties, the SWZ adversary proceeding is currently scheduled for a three day trial in late January (subject to further order or grant of summary judgment).

*Conclusion*

Based on the foregoing, I find and conclude that Movants have not met their burden of proof to establish cause under § 324 to remove Trustee. The Removal Motion will be denied per the accompanying Order.

Dated: October 19, 2020

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE